**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Terves LLC, | ) | |
| | ) | Case No. 1:19-cv-1611-DCN |
| Plaintiff, | ) | |
| | ) | Judge Donald C. Nugent |
| vs. | ) | |
| | ) | |
| Yueyang Aerospace New Materials Co. Ltd. | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Terves' Memorandum in Support of Terves' Motion to Dismiss**
**Inequitable Conduct Counterclaims and to Strike Affirmative Defense #6**

David B. Cupar (OH 0071622)
Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

*Counsel for Terves LLC*

{9243420: }

## **Table of Contents**

Table of Authorities ......................................................................................................... ii

Statement of Issues ......................................................................................................... iv

Summary of Argument ...................................................................................................... v

Introduction ...................................................................................................................... 1

Procedural Background ..................................................................................................... 1

Law and Argument ........................................................................................................... 3

I.  Inequitable Conduct Pleading Standard ......................................................... 3

II.  Ecometal applies an old, overruled "materiality" standard .............................. 5

III.  The Court should dismiss Counterclaim One (the '010 Patent) ...................... 5

    A.  Terves' patent counsel disclosed Xiao to the USPTO ............................ 6

    B.  By Ecometal's own admission, a full Xiao translation is not "but-for" material, especially in light of what patent counsel disclosed ............ 7

    C.  Ecometal has not alleged that the Chinese FOA is but-for material ...................... 9

    D.  Ecometal's conclusory intent-to-deceive allegations fall short ............................ 11

IV.  The Court should dismiss Counterclaim Two (the '653 Patent) ...................... 12

    A.  Turung disclosed the dissolution table in Xiao ...................................... 12

    B.  The Chinese FOA is, at best, cumulative to Xiao .................................... 15

    C.  Ecometal does not plausibly allege intent to deceive ........................... 16

V.  The Court should dismiss Counterclaim Three (the '740 Patent) .................... 16

    A.  Turung disclosed the Xiao dissolution tables that Ecometal cites ....................... 16

    B.  The Court should dismiss because Ecometal fails to plausibly allege that the inventors or Turung had knowledge of the documents Ecometal cites ......................... 17

    C.  Ecometal failed to allege "how" the mere identity of the litigation was "but-for" material to the patentability of the '740 Patent ............... 19

    D.  Ecometal fails to plausibly allege that individuals intended to deceive ............... 19

VI.  Ecometal's inequitable conduct affirmative defense should be stricken ........................ 20

Conclusion ...................................................................................................................... 20

## Table of Authorities

*Cases*

*Abaxis, Inc. v. Cepheid*, 2011 WL 3741501 (N.D. Cal. Aug. 25, 2011) ......................................17

*Am. Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350 (Fed. Cir. 1984) ................................13

*Andritz Inc. v. Cortex N. Am. Corp.*, 2020 WL 4495267 (D. Or. Aug. 4, 2020)............................4

*AstraZeneca Pharmas. LP v. Teva Pharmas. USA*,
    567 F. Supp. 2d 683 (D.N.J. 2008) ................................................................... 11, 12 & n.6

*Boston Scientific Corp. v. Micro-Tech Endoscopy USA Inc.*,
    2020 WL 1550781 (D. Del. Apr. 1, 2020)....................................................................4

*Chameleon Chairs, LLC v. Theoni, Inc.*, CV 18-06816-AB,
    2018 WL 6427366 (C.D. Cal. Nov. 8, 2018).................................................................20

*C.R. Bard, Inc. v. Med. Components, Inc.*,
    2019 WL 1746309 (D. Utah Apr. 18, 2019)........................................................4, 18, 19

*Elan Microelectronics Corp. v. Apple, Inc.*,
    2010 WL 3069322 (N.D.Cal. Aug. 4, 2010) ...................................................................15

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) ........................4, 17, 18

*Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318 (Fed. Cir. 2000)..................................................6

*Gavitt v. Born*, 835 F.3d 623 (6th Cir. 2016)...............................................................10 n.5, 15 n.7

*Int'l Test Solutions, Inc. v. Mipox Int'l Corp.*,
    2017 WL 2118314 (N.D. Cal. 2017) ....................................................................11, 18, 19

*Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 16-CV-3529,
    2016 WL 5871501 (N.D. Ill. Oct. 7, 2016)...................................................................20

*Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 17 C 7216,
    2018 WL 4333629 (N.D. Ill. Sept. 11, 2018) .................................................................13

*Nevro Corp. v. Bos. Sci. Corp.*, 2017 WL 7795778 (N.D. Cal. Oct. 4, 2017)..............................14

*Oracle Corp. v. DrugLogic, Inc.,* 807 F. Supp. 2d 885, 899 (N.D. Cal. 2011) ............................15

*PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299 (Fed. Cir. 2008)...................................13

*Seaboard Intern., Inc. v. Cameron Intern. Corp.*,
    2013 WL 3936889 (E.D. Cal. 2013)............................................................................19

*St. Jude Medical, Cardiology Div., Inc. v. Volcano Corp.*, 2014 WL 2622240
    (D. Del. June 11, 2014)................................................................................................4

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) (en banc)...............................................................3, 4, 5

*Unicorn Global, Inc. v. Hillo Am., Inc.*, No CV-19-03028,
    2020 WL 4355301 (C.D. Cal. Mar. 23, 2020) ...................................................... 10-11, 15

*Virginia Innovation Scis., Inc. v. Samsung Elecs. Co.*,
    11 F. Supp. 3d 622 (E.D. Va. 2014) ................................................................................15

*Watermark Senior Living Retirement Communities, Inc. v.*
    *Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421 (6th Cir. 2018)................................18 n.9

### Rules

37 C.F.R. 1.98(a)(3) ...................................................................................................................7

Fed. Civ. R. 9(b) .........................................................................................................................4

Fed. Civ. R. 12(f) .....................................................................................................................20

MPEP 609.02 .....................................................................................................................20 n.10

## <u>Statement of Issues</u>

1.      Did Ecometal state a valid counterclaim for inequitable conduct against the '010 patent under Rule 9, the Federal Circuit's *Therasense* legal standard, and other applicable law?

2.      Did Ecometal state a valid counterclaim for inequitable conduct against the '653 patent under Rule 9, the Federal Circuit's *Therasense* legal standard, and other applicable law?

3.      Did Ecometal state a valid counterclaim for inequitable conduct against the '740 patent under Rule 9, the Federal Circuit's *Therasense* legal standard, and other applicable law?

## <u>Summary of Argument</u>

The Court should dismiss Counterclaims One, Two, and Three, and strike affirmative defense #6, which assert inequitable conduct against three Terves' patents. The Court should dismiss because defendants' pleading fails to meet both of the elements needed to state such a claim: (i) but-for materiality, and (ii) intent to deceive. Its allegations fail to show that something material was withheld from the USPTO (especially because the Chinese Xiao patent on which Ecometal bases its claims was cited and disclosed to the USPTO), and the allegations fail to sufficiently plead that the inventors and Terves' patent attorneys believed there was something material in a full English translation of Xiao that they intentionally withheld from the USPTO.

The Court should grant this motion.

## Introduction

For the past decade, courts have worked to rid patent cases of the "plague" of defense attorneys attempting to allege "inequitable conduct" – a fancy term for fraud before the USPTO. The law is clear: to assert such a claim a party must plead with particularity the who, when, what, where, why, and how of the fraud. When the alleged fraud is an allegation that prior art was withheld, the defendant must show specifically how the allegedly undisclosed prior art would have caused the USPTO to reject the patent (which is called "but-for" materiality), and must show that specific individuals knew that the undisclosed reference had that material disclosure, and made a conscious decision to hide the disclosure from the USPTO to get a patent.

Ecometal's inequitable conduct claim based on a Chinese prior art reference (the Xiao patent) that Terves *did* cite to the patent office, but didn't go out and get a full English translation for, fails to state a claim and is the very type of tactical claim that the Federal Circuit empowered district courts to dismiss in its en banc *Therasense* decision. The Court should dismiss.

## Procedural Background

Terves sued Ecometal Inc. and Nick Yuan (collectively, "Ecometal") in July 2019, and amended its complaint in October 2019, before Ecometal answered. (ECF #1, 13.) Terves asserted U.S. Patent Nos. 9,903,010 and 10,329,653 (the "'010 and '653 patents"). Ecometal answered the first amended complaint on November 8, 2019 (ECF #17.) Ecometal did not assert inequitable conduct in that pleading, despite having all of the publicly-available records on which it now bases its inequitable conduct counterclaims against the '010 and '653 patents.

Ecometal served its invalidity contentions on January 6, 2020.[1] Ecometal had the same documents in its possession on January 6, 2020, as those cited for its inequitable conduct claims against the '010 and '653 patents in its pending counterclaims. Yet those contentions did _not_ assert any defense of inequitable conduct against Terves, nor did Ecometal believe that the publicly-available documents that it now points to were a basis to allege inequitable conduct claims against the '010 or '653 patents. (Ex. A at 5-6.) Instead, Ecometal said it was "currently investigating and conducting discovery" and "expressly reserves the right" to supplement if it were to uncover such facts or information. (_Id._)  Ecometal has never supplemented or amended its invalidity contentions with any facts or information to contend inequitable conduct.

In June 2020, Ecometal deposed each of the three inventors of the '010 and '653 patents: Brian Doud, Nick Farkas, and Andrew Sherman. In deposition, Ecometal never asked any questions to either Doud or Farkas about their knowledge of any of the documents now cited in Ecometal's inequitable conduct counterclaims. (Ex. B, Doud Deposition & Ex. C, Farkas Deposition.) Ecometal did ask Mr. Sherman about whether he had knowledge of either Xiao or the Chinese Office Action, and Mr. Sherman testified that he had no knowledge of those documents. (Ex. D, Sherman Dep. 177:9-182:24.) None of their testimony is cited in Ecometal's inequitable conduct counterclaims. (_See generally_ Am. Countercl., ECF #66.) Despite Mr. Sherman specifically testifying that he had no knowledge of Xiao or the Chinese Office Action, and avoiding asking Doud and Farkas completely about their knowledge in depositions, Ecometal now alleges that they had knowledge. (_See, e.g.,_ Am. Countercl. ¶ 69.)

After obtaining discovery and depositions from Terves, Ecometal responded to Terves' preliminary injunction motion. (ECF #40.) Ecometal did _not_ raise inequitable conduct as a

---

[1] Although Ecometal purported to attach its invalidity contentions as Exhibit 14 (Countercl. ¶ 62), it did not include the contentions themselves and only included the exhibits. (_See_ ECF #66-14.) Terves has attached as Ex. A Ecometal's invalidity contentions that it omitted.

defense to Terves' patent infringement claims or as a basis against Terves' likelihood of success on the merits in opposition to Terves' preliminary injunction motion. (*Id.*)

Shortly after U.S. Patent No. 10,689,740 (the "'740 patent") issued, Terves amended its complaint to add that patent. (ECF #44.) For the first time in this litigation, Ecometal asserted inequitable conduct claims against the '010 and '653 patents, and against the '740 patent in its answer to Terves' second amended complaint. Again, despite obtaining discovery and depositions in this case, Ecometal cites none of it in its new counterclaims. (*See* ECF #66.)

Terves moved to dismiss the inequitable conduct counterclaims and to strike the affirmative defenses. (ECF #58.) Ecometal amended its counterclaims in response. (*See* ECF #66.) Because the amended counterclaims remain invalid, Terves moves again to dismiss.

**Law and Argument**

## I.    Inequitable Conduct Pleading Standard

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). To prove inequitable conduct based on an alleged failure to disclose information to the USPTO, the accused infringer must prove by clear and convincing evidence that the patent applicant: (i) failed to disclose a *material* reference; and (ii) with the specific intent to deceive the USPTO. *Id.* at 1290. "Intent and materiality are separate requirements." *Id.*

To prove materiality, plaintiff must show that "but-for" withholding the reference, the USPTO would not have issued the patent. *Id.* at 1291. In other words, the USPTO would not have allowed one or more claims in the patent if it knew of the undisclosed prior art. *Id.* To show materiality, the accused infringer must identify a claim limitation that was lacking in the prior art and show how and why the USPTO would have seen that limitation in the undisclosed prior art.

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1329 (Fed. Cir. 2009) ("Such allegations are necessary to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims."); *see also St. Jude Medical, Cardiology Div., Inc. v. Volcano Corp.*, 2014 WL 2622240, at *1 (D. Del. June 11, 2014); *Boston Scientific Corp. v. Micro-Tech Endoscopy USA Inc.*, 2020 WL 1550781, at *2 (D. Del. Apr. 1, 2020).

A specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *Therasense*, 649 F.3d. at 1290. "A finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Id.* "Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Id.* Rather, to prove intent to deceive, "the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id.* "[W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id.* at 1290-91.

Inequitable conduct must be pleaded with particularity under Rule 9(b). "[I]n pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omissions committed before the PTO." *Exergen Corp.*, 575 F.2d at 1327.

When an accused infringer fails to plead a plausible claim of but-for materiality or intent to deceive, district courts correctly dismiss. *See, e.g.*, *St. Jude*, 2014 WL 2622240, at *2; *Andritz Inc. v. Cortex N. Am. Corp.*, 2020 WL 4495267, at *4-6 (D. Or. Aug. 4, 2020); *C.R. Bard, Inc. v. Med. Components, Inc.*, 2019 WL 1746309, at *1-4 (D. Utah Apr. 18, 2019).

## II.  **Ecometal applies an old, overruled "materiality" standard.**

According to Ecometal, under inequitable conduct law, "'material' means that a reasonable U.S. Patent Examiner would have considered the information important in deciding whether or not to allow the '010 Patent." (Countercl. ¶ 37.)

In its 2011 *Therasense* decision, however, an en banc panel of the Federal Circuit replaced that old test with a "but-for" standard. The Federal Circuit criticized the old test as too lenient that led to it being overused as "a common litigation tactic" that "plagued not only the courts but also the entire patent system." *Therasense*, 649 F.3d at 1288-89. The "low standards for meeting the intent requirement" and "a broad view of materiality," *Therasense* explained, led to "many unintended consequences, among them, increased adjudication cost and complexity, reduced likelihood of settlement, burdened courts, strained PTO resources, increased PTO backlog, and impaired patent quality." *Id.* Thus, *Therasense* "tighten[ed] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." *Id.* at 1290.

This Court should apply the correct but-for standard in deciding Terves' motion.

## III.  **The Court should dismiss Counterclaim One (the '010 Patent)**

Counterclaim One alleges that the '010 patent was obtained by inequitable conduct based on the allegation that Terves' patent counsel, Brian Turung, Esq., withheld a "full-length English-language version of Xiao (hereinafter, a "full Xiao translation"[2]) and/or the Chinese

---

[2] Terves refers to a full-length English translation of Xiao as a "full Xiao translation," rather than refer to it as an English "version" of Xiao. Ecometal's pleading references English and Chinese "versions" of Xiao as if the Chinese patent office issued two *versions* of Xiao: a Chinese and English version, and that Terves decided only to disclose the Chinese *version*. This is untrue. As a Chinese patent, Xiao issued only in Chinese. If one wants an English translation of Xiao, it needs to obtain a translation from somewhere.

Patent Office's First Office Action." (Am. Countercl. ¶ 37.) Ecometal alleges that Xiao discloses

the following claim limitation (hereinafter, the "melting point limitation"):

> adding an additive material to said magnesium or magnesium alloy while said magnesium or magnesium alloy is at a temperature that is above said solidus temperature of magnesium or magnesium alloy and a temperature that is less than a melting point of said additive material.[3]

('010 patent, claim 1; *see* Am. Countercl. ¶ 34.)

These lawyer-imagined allegations that besmirch a longtime, respected member of the

patent bar[4] follow the same pattern as the spin-off trade secret lawsuit engineered by Ecometal's

attorneys on behalf of Ecometal's customer, MMP. *See Magnesium Machine, LLC et al. v.*

*Terves LLC et al.*, No. 1:19-cv-2818 (N.D. Ohio). These attorneys twist innocent facts to make

heavy allegations of immoral conduct against honest attorneys. As in the trade secret case, the

law and facts alleged in the pleading do not support the lawyer-written fairy tale. Ecometal's

allegation fails to state a claim for inequitable conduct for several reasons.

### A.     Terves' patent counsel disclosed Xiao to the USPTO.

At the outset, Ecometal's defense is peculiar because it admits that Turung cited Xiao to

the USPTO and provided a full copy of Xiao to the USPTO (in Chinese, as it was issued) and an

English translation of Xiao's Abstract. (Am. Countercl. ¶¶ 26-28.) This shows an unmistakable

intent to disclose, not an intent to deceive by Turung. *See Fiskars, Inc. v. Hunt Mfg. Co.*, 221

F.3d 1318, 1327 (Fed. Cir. 2000) ("An applicant [cannot] be guilty of inequitable conduct if the

reference was cited to the examiner."). Ecometal does not provide any allegation that Turung had

---

[3] Although the law required Ecometal to cite the exact claim limitation language that it alleges was disclosed by the allegedly undisclosed documents, Ecometal did not cite any language from the claims of the '010 patent, but instead cites only to patent counsel's statement to the USPTO during prosecution. (*See* Am. Countercl. ¶¶ 31, 34.) Terves presumes that Ecometal meant to refer to the quoted language from claim 1 to which this footnote is appended.

[4] Brian Turung has been a patent attorney for 30 years without a blemish on his record. He spent most of his career at Fay Sharpe LLP, and recently moved to Ulmer & Berne LLP.

possession of a full Xiao translation that he chose to withhold, and the law does not require that Turung go out and obtain a full English translation to satisfy his disclosure obligations. 37 C.F.R. § 1.98(a)(3) (requiring translation only if it "is within the possession, custody, or control of, or is readily available to" the individual).

Ecometal cites no deceptive acts or statements by Turung that misrepresented or misled the USPTO about what was in Xiao. Indeed, Ecometal does not cite any discussion by either Turung or the USPTO about Xiao during prosecution of the '010 patent. That lack of discussion makes sense because, as explained more below, Xiao does not disclose the melting point limitation that was in the claims of the '010 patent from the start.

Because Turung cited Xiao and provided the copy that he had to the USPTO, there is no plausible allegation that he committed fraud, and the Court should dismiss Counterclaim One.

**B.      By Ecometal's own admission, a full Xiao translation is not "but-for" material, especially in light of what patent counsel disclosed.**

If Ecometal had alleged that Turung had in his possession of a full Xiao translation during prosecution of the '010 patent—and there's no allegation that he did—Ecometal still would not have stated a valid claim for inequitable conduct because it fails to allege *but-for* materiality in what was not disclosed.

Because Ecometal relies only on the melting point limitation (defined above), Ecometal needed to plead how and why: (a) that particular limitation is disclosed by a full Xiao translation, and (b) how it is not disclosed by Xiao or the English translation of Xiao's Abstract that were disclosed. (*See* cases cited *supra* p.3-4.) To try and do this, Ecometal offers only a single paragraph in its counterclaim—Paragraph 35—that quotes language from a full Xiao translation. That language, however, says nothing whatsoever about there being different melting point temperatures between the magnesium/magnesium alloy and the elements that are added. (*See*

Am. Countercl. ¶ 35.) The quoted language only identifies the different elements added to the magnesium/magnesium alloy without any commentary on melting point temperatures.

Moreover, the listing of elements that Ecometal quotes from the full Xiao translation (which Ecometal alleges was withheld) was provided in the translated Xiao Abstract. (*See* ECF #66-6 (English abstract).) That Abstract, which Ecometal admits Turung disclosed, identifies every single element added to the magnesium that is described in the language from the full Xiao translation that Ecometal quotes in Paragraph 35 of its counterclaim, namely: Al (aluminum), Zn (zinc), Fe (iron), Cu (copper), Ag (silver), Zr (zirconium), and Ti (titanium). (*Id.*)

Ecometal underscores this point by alleging, in the next paragraph of its counterclaim, that the full Xiao translation's identification of those elements and their concentration levels *is* the material disclosure of Xiao that was allegedly not disclosed. Ecometal makes this allegation in Paragraph 36, where it claims that quoted language from the "Chinese Patent Office's First Office Action" (the "Chinese FOA") in a related Terves' patent application discloses "the[] elements [found] in the full-length version of Xiao." (Countercl. ¶ 36.) The "elements" allegedly found in the full Xiao translation, which Ecometal alleges are recited in the Chinese FOA, are indisputably disclosed by the translated Abstract of Xiao that Turung did disclose. This comparison table proves it:

The invention discloses light and pressure-proof fast-decomposed cast magnesium alloy which can be used as a tripping ball material for a multi-stage sliding sleeve staged-fracturing technique. The light and pressure-proof fast-decomposed cast magnesium alloy is prepared from the following components: 13-25% of Al, 2-15% of Zn, 0.1-5% of Fe, 0.05-5% of Cu, 0.05-5% of Ni, 0-5% of Ag, 0.05-0.5% of Zr, 0.05-0.5% of Ti, and the balance of Mg. The preparation method comprises the following steps of: weighing the components according to the designed component ratio of the magnesium alloy; firstly, putting pure magnesium and pure aluminum into a smelting furnace, putting pure zinc and intermediate alloy of other components into magnesium-aluminum alloy melt after melting; refining, degassing, and stewing after warming to melt; then casting in a protective atmosphere. The light and pressure-proof

*Screenshot from Xiao Abstract (ECF #66-6, PageID #5308)*

> The casting magnesium alloy of the withstand voltage quick decomposition of light. The micro- component that still includes following weight percentage., Al 13-25% Zn 2-15% Fe 0.1-5% Cu 0.05-5% Ni 0.05-5% (is the additive material., The additive material has the fusing point of the said solidus temperature that is greater than said magnesium or magnesium alloy., And additive material Cu., Nichar(39)s addition and be 1 ~ 10%., Drop on in the scope of claim 1)., Ag 0-5% Zr 0.05-0.5% Ti 0.05-0.5% The surplus is Mg.

**Screenshot from Chinese FOA (Countercl. ¶ 36, ECF #66, PageID #5239)**

Because the very elements that Ecometal pleads were material in the full Xiao translation (as recited in the Chinese FOA) were in the English Abstract that Turung gave to the USPTO, Ecometal's own pleading admits that nothing material was withheld. The Court should dismiss Counterclaim One on that additional ground.

## C. Ecometal has not alleged that the Chinese FOA is but-for material.

Ecometal does not allege that the Chinese FOA is but-for material for several other reasons. First, as explained in the preceding subsection, the portion of the Chinese FOA that Ecometal alleges as material was in the translated Abstract that Turung disclosed.

Second, the Chinese FOA issued <u>before</u> Terves amended its Chinese claims to add the melting point limitation that is in the claims of the '010 patent. (*See* Am. Countercl. ¶ 25.) The timing of the Chinese FOA, therefore, makes it irrelevant and Ecometal's claim of materiality even less plausible: the Chinese patent office could not possibly have addressed whether Xiao discloses the melting point limitation because it wasn't in Terves' Chinese claims at that time.

Ironically, Terves' prosecution of the Chinese patent application shows that the Chinese patent office concluded that Xiao does <u>not</u> disclose the melting point limitation, and thus make Ecometal's allegations less plausible, not more plausible. As Ecometal correctly alleges, the Chinese patent office initially rejected the claims in Terves' Chinese application in view of Xiao (Am. Countercl. ¶ 24.) In response, Terves amended the claims to specify that the temperature of

the magnesium/magnesium alloy is "lower than the melting point temperature of said additive material." (*Id.* ¶ 25; *see also* ECF #66-3 at PageID #5276.) This added language is the same "melting point limitation" that is in the claims of the '010 patent.

The Chinese patent office, which had the entirety of Xiao in front of it and understands Chinese better than anyone (and certainly better than Mr. Turung), concluded that Xiao did <u>not</u> disclose the different melting point limitation because it granted a patent after Terves added that limitation to the Chinese claims. (Grant of Patent Right, Ex. E.)[5] Because the Chinese patent office did not view Xiao as disclosing the melting point limitation, there can be nothing material withheld from Xiao. Far from plausibly alleging that Xiao is "but for" material as to the patentability of Terves' claims in the '010 patent, the facts cited by Ecometal shows the opposite: Xiao fails to disclose key language set for in those patent claims so that it is not material, let alone "but for" material. (Am. Countercl. ¶¶34-42.)

In sum, Ecometal has not plausibly alleged that a full Xiao translation or the Chinese FOA are material to patentability because they say nothing about melting point temperatures of the additives vis-à-vis the melting point temperatures of the magnesium/magnesium alloys to which the additives are added—the limitation present in the claims of the '010 patent. This reality is bolstered by the Chinese patent office allowing the Chinese claims over Xiao after Terves added the melting point limitation that is in the'010 patent. Furthermore, because the English abstract that was provided to the USPTO identifies every element that Xiao adds to the magnesium/magnesium alloy and their ranges of concentrations (*e.g.*, "0.05-5% Ni"), the full Xiao translation and the Chinese FOA would have been cumulative, and Ecometal has not provided a plausible explanation to show how they were not cumulative. *See Unicorn Global,*

---

[5] Because Ecometal's counterclaim cites parts of the Chinese patent prosecution record, which is public record, this Court may consider other parts of the prosecution record without converting this motion to one for summary judgment. *See Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

*Inc. v. Hillo Am., Inc.*, No CV-19-03028, 2020 WL 4355301, at *5 (C.D. Cal. Mar. 23, 2020) (rejecting allegation that "Chinese office action" was fraudulently withheld where prior art cited in Chinese office action was disclosed).

### D. Ecometal's conclusory intent-to-deceive allegations fall short.

Ecometal's inequitable allegations separately fail because the intent to deceive allegations against Turung fall well below what Rule 9's pleading standard requires.

First, Ecometal does not allege that Turung had a copy of a full Xiao translation, nor does it allege that Turung knew of something material in a full Xiao translation that was not disclosed by virtue of him citing Xiao and providing a copy of Xiao and the translated Abstract. It cannot be intentional deception to withhold something that one does not have or does not know to be material. (*See* cases cited *supra* p.3-4.) Alleging or suggesting that Turung "should have" gotten a full translation of Xiao is not enough to allege that he intended to deceive. *See Int'l Test Solutions, Inc. v. Mipox Int'l Corp.*, 2017 WL 2118314, *6-*7 (N.D. Cal. 2017) ("General knowledge of ITS operations is 'not sufficient to support an inference that [Broz or Adams] knew of specific material information contained in the prior art allegedly withheld.").

Second, Ecometal admits that Turung cited Xiao, provided a copy of it (as it exists in Chinese), and provided the English translation of the Abstract. (Am. Countercl. ¶ 28.) Those facts demonstrate that Turung was not intending to hide anything regarding Xiao. There can be <u>no</u> inequitable conduct if the translation patent counsel provides is correct and not misleading. *See AstraZeneca Pharmas. LP v. Teva Pharmas. USA*, 567 F. Supp. 2d 683, 700 (D.N.J. 2008) (the "fact that Astra voluntarily disclosed the reference to the examiner and gave him the

Research Disclosure reference as well as the English-language abstract severely undercuts an argument that there was an intent to deceive.").[6]

Third, as explained above, the Xiao Abstract identifies every single element that Xiao adds to the magnesium/magnesium alloy and identifies the range of percentages for each element added. So a reasonable reading of that Abstract shows everything from Xiao that would have been potentially material to patentability. Ecometal provides no allegation that Turung knew of something in the full Xiao translation that he believed would kill the patent and thus intentionally withheld it, especially when there is no allegation that Turung had a full Xiao translation, let alone read it. Ecometal also does not allege, nor can it, that Turung described Xiao in a deceptive way or did anything to mislead the USPTO about what was in Xiao.

Fourth, there are several non-fraudulent reasonable inferences that can be drawn from the facts alleged by Ecometal, such that it failed to allege that intent to deceive is the single reasonable inference that may be drawn—as it must. Such non-fraudulent explanations include that Turung did not have a full Xiao translation to disclose, Turung correctly believed that citing to Xiao and providing the English Abstract satisfied his obligation, and Turung was not aware of anything in a full Xiao translation that was material to patentability.

The Court should dismiss Counterclaim One for any or all of those reasons.

## IV.   The Court should dismiss Counterclaim Two ('653 Patent)

### A.   Turung disclosed the dissolution table in Xiao.

Ecometal's sole basis for Counterclaim Two is that the dissolution rate table in Xiao would have been material to patentability of the '653 patent, and Turung allegedly did not disclose the table. (*See* Am. Countercl. ¶¶49-51.) The pleading does not support this.

---

[6] *AstraZeneca*, which issued before *Therasense*, found the disclosure of a foreign reference with the English abstract showed a lack of intent under the old standard. This reinforces that Turung's disclosure of Xiao plus the English abstract is *not* an intent to deceive under the narrower *Therasense* standard.

First, Ecometal itself _admits_ that "the full-length Chinese-language version of Xiao _does disclose_ the dissolution rates." (Am. Countercl. ¶ 49 (emphasis added).) Ecometal also admits that Turung disclosed that "full-length Chinese version of Xiao" with the dissolution rate table to the USPTO. (_Id._ ¶ 26.) Because Turung disclosed to the USPTO the very dissolution rate information in Xiao that Ecometal calls "material," there can be no inequitable conduct.

Information that "is in a non-English language will be considered [by the USPTO examiner] insofar as it is understood on its face, _e.g._, drawings, _chemical formulas_, in the same manner that non-English language information in Office search files is considered by examiners in conducting searches." _See_ M.P.E.P. 609.05(B) (emphasis added). And absent some basis to the contrary, the Examiner is "presumed to have properly done [his] job." _PowerOasis, Inc. v. T-Mobile USA, Inc._, 522 F.3d 1299, 1304 (Fed. Cir. 2008) (quoting _Am. Hoist & Derrick Co. v. Sowa & Sons_, 725 F.2d 1350, 1360 (Fed. Cir. 1984)); _Medline Indus., Inc. v. C.R. Bard, Inc._, No. 17 C 7216, 2018 WL 4333629, at *4 (N.D. Ill. Sept. 11, 2018) (granting motion to dismiss).

In accordance with M.P.E.P. 609.05(B), Turung properly provided Xiao to the USPTO, which on its face identifies _in English_ the chemical formulas and dissolution rate table. The USPTO examiner also considered Xiao in full as required by USPTO rules. (Ex. F, References Considered, see footnote 7.) As shown below, the Table 1 of Xiao disclosed to the USPTO by Turung identifies the chemical formulas for seven different magnesium compounds:

<table>
<tr><td>合金</td><td>Al</td><td>Zn</td><td>Fe</td><td>Ni</td><td>Cu</td><td>Ag</td><td>Ti</td><td>Zr</td><td>Mn</td><td>Mg</td></tr>
<tr><td>对比例 1 (AZ91D)</td><td>9.00</td><td>1.00</td><td>0</td><td>0</td><td>0</td><td>0</td><td>0</td><td>0</td><td>0.01</td><td>0.03</td><td>余量</td></tr>
<tr><td>实施例 1</td><td>13</td><td>1.3</td><td>0.1</td><td>5</td><td>0</td><td>2.5</td><td>0.5</td><td>0.5</td><td>0</td><td>余量</td></tr>
<tr><td>实施例 2</td><td>15</td><td>5</td><td>0.5</td><td>0.1</td><td>0</td><td>0</td><td>0.1</td><td>0.1</td><td>0</td><td>余量</td></tr>
<tr><td>实施例 3</td><td>20</td><td>10</td><td>5</td><td>2.5</td><td>2.5</td><td>5</td><td>0.25</td><td>0.25</td><td>0</td><td>余量</td></tr>
<tr><td>实施例 4</td><td>18</td><td>8</td><td>2.5</td><td>2.0</td><td>5</td><td>1</td><td>0.3</td><td>0.15</td><td>0</td><td>余量</td></tr>
<tr><td>实施例 5</td><td>20</td><td>5</td><td>0.8</td><td>0.05</td><td>0.05</td><td>0</td><td>0.05</td><td>0.1</td><td>0</td><td>余量</td></tr>
<tr><td>实施例 6</td><td>15</td><td>6</td><td>1.5</td><td>0.2</td><td>1</td><td>2</td><td>0.15</td><td>0.1</td><td>0</td><td>余量</td></tr>
<tr><td>实施例 7</td><td>25</td><td>10</td><td>1</td><td>0.5</td><td>0.1</td><td>0</td><td>0.5</td><td>0.05</td><td>0</td><td>余量</td></tr>
</table>

Control formula AZ91D in ENGLISH →

Formulas 1-7 in ENGLISH →

(ECF #66-7 at PageID #5317.) Again, based on what Xiao discloses on its face to English speakers, nothing material was possibly withheld during prosecution of the '010 or '653 patents.

Further, Xiao's Table 2 identifies the dissolution rates, and Turung disclosed it:

**Table 2: Xiao In ENGLISH discloses Two Columns of Dissolution Rates (shown with the unit g.cm$^{-2}$.h$^{-1}$) dissolved in 3%KCl at 70ºC and 93ºC for the Formulas in Table 1**

**ENGLISH: Dissolution Rate (g.cm$^{-2}$.h$^{-1}$) dissolved in 3%KCl at 70ºC**

**ENGLISH: Dissolution Rate (g.cm$^{-2}$.h$^{-1}$) dissolved in 3%KCl at 93ºC**

**Control 1 and Formulas 1-7 in ENGLISH**

**All Values in ENGLISH**

| | 室温抗拉强度 σ_b (MPa) | 70℃在3%KCl溶液中的分解速率(g.cm$^{-2}$.h$^{-1}$) | 93℃在3%KCl溶液中的分解速率(g.cm$^{-2}$.h$^{-1}$) |
|---|---|---|---|
| 对比例 1 | 232 | 0.00026 | 0.0005 |
| 实施例 1 | 360 | 0.035 | 0.074 |
| 实施例 2 | 385 | 0.015 | 0.045 |
| 实施例 3 | 410 | 0.013 | 0.036 |
| 实施例 4 | 375 | 0.034 | 0.058 |
| 实施例 5 | 392 | 0.025 | 0.048 |
| 实施例 6 | 365 | 0.021 | 0.063 |
| 实施例 7 | 387 | 0.036 | 0.057 |

Turung performed his disclosure requirements so that there can be no inequitable conduct. *Fiskars,* 221 F.3d at 1327.

Also, because Turung disclosed these dissolution rates in Xiao, there can be no inequitable conduct based on any allegation by Ecometal that Turung had to make sure that the USPTO examiner understood the dissolution rate table in Xiao. *See Nevro Corp. v. Bos. Sci. Corp.*, 2017 WL 7795778, at *1 (N.D. Cal. Oct. 4, 2017) (granting motion to strike because "while an inventor must disclose all material information to the patent examiner, he is not required to make sure the patent examiner understands that information"). The Examiner notated that he "considered" Xiao in his records, and noted on each page his initials that he considered

all references unless there were striked out with a line (which Xiao was not).[7] (Ex. F, References Considered.) It is presumed that when the USPTO examiner considers a cited reference such as Xiao, he considers the entire reference. *See Virginia Innovation Scis., Inc. v. Samsung Elecs. Co.*, 11 F. Supp. 3d 622, 645 (E.D. Va. 2014). Therefore, Turung did his job and Ecometal cannot plausibly gin up a fraud claim against him based on these facts.

Simply put, Ecometal's allegations show that: (i) Turung disclosed all material information that he knew about Xiao to the USPTO, (ii) the USPTO examiner considered all of that information, and (iii) issued the '653 patent over it.

**B. The Chinese FOA is, at best, cumulative to Xiao.**

Ecometal alleges that the Chinese FOA identifies the same "material" information as does Xiao. (Am. Countercl., ¶35-37 (both documents disclose same temperature language); ¶50-52 & ¶68-69 (both documents identify same dissolution rates).)

Ecometal's own allegations makes the Chinese FOA *cumulative* to Xiao. It is black letter law that Ecometal must allege with adequate facts how the Chinese FOA has material information that is *not* cumulative to the material information already disclosed the references before the USPTO such as what is disclosed in Xiao. *See Oracle Corp. v. DrugLogic, Inc.,* 807 F. Supp. 2d 885, 899 (N.D. Cal. 2011) (granting motion to dismiss because defendant failed to allege "how" purportedly withheld document was not cumulative to other cited references); *Elan Microelectronics Corp. v. Apple, Inc.,* 2010 WL 3069322, at *2–3 (N.D.Cal. Aug. 4, 2010) (granting motion to dismiss where the defendant failed to support its conclusion that allegedly withheld material was not cumulative); *see also Unicorn Global*, 2020 WL 4355301, at *5. Because Turung disclosed Xiao—particularly its dissolution rates—and the English translation

---

[7] The Court may consider that References Considered from the '653 patent's prosecution history without converting the motion to one for summary judgment because it is public record and Ecometal's pleading cites the prosecution history and other documents from it. *See Gavitt*, 835 F.3d at 640.

of the Abstract to the USPTO, any information in the Chinese FOA is cumulative. The Court should dismiss Counterclaim Two for failure to plausibly allege materiality.

      **C.**    **Ecometal does not plausibly allege intent to deceive.**

The Court should separately dismiss Counterclaim Two because Ecometal does not plausibly allege that Turung had intent to deceive for several reasons similar to those for Counterclaim One: (i) Ecometal does not allege that Turung had a full Xiao translation, let alone saw something in it that was material and intentionally withheld it; (ii) Turung fully complied with his disclosure obligation by citing Xiao, providing a copy of it (in its original Chinese), and providing the translated Abstract; (iii) despite Xiao being in Chinese, the dissolution tables use English numbers and symbols, such that an English speaker would understand what they disclose; and (iv) there are no allegations to refute the reasonable inference that Turung did not disclose a full Xiao translation or Chinese FOA because he either did not have them, did not believe that they were material, or believed they were cumulative.

The Court should dismiss Counterclaim Two for any or all of those reasons.

## V.    The Court should dismiss Counterclaim Three ('740 Patent)

      **A.**    **Turung disclosed the Xiao dissolution tables that Ecometal cites.**

In Counterclaim Three, Ecometal alleges that the inventors of the '740 patent, Doud, Farkas, and Sherman, and Turung committed inequitable conduct by not disclosing: (a) a full Xiao translation, (b) Ecometal's invalidity contentions from this case, and (c) "the existence of this litigation." (Am. Countercl. ¶¶ 65-66.) According to Ecometal, those items are material to patentability because they disclose the "dissolution rate the Examiner noted was missing from Scharf." (*Id.* ¶ 68.) That's Ecometal's sole argument for materiality on each of those three items.

Because Ecometal admits that Turung disclosed Xiao to the USPTO (*Id.* ¶ 60), and because the dissolution rate tables in Xiao are readable and understandable by English speakers (*see supra* p.13-14), this argument fails as a matter of law. Any other disclosures concerning the dissolution rate table in Xiao would be redundant and cumulative. (*See* cases cited *supra* p.15.)

On that basis alone, the Court should dismiss Counterclaim Three.

**B.      The Court should dismiss because Ecometal fails to plausibly allege that the inventors or Turung had knowledge of the documents Ecometal cites.**

Ecometal alleges that Doud, Farkas, Sherman, and Turung committed inequitable conduct because they had knowledge of Ecometal's invalidity contentions for the '010 and '653 patents and the full Xiao translation, and should have disclosed those documents to the USPTO during prosecution of the '740 patent.[8] (Am. Countercl. ¶ 78.) As set forth below, Ecometal does not—and cannot—plausibly allege that the inventors or Turung had any knowledge of the invalidity contentions or full Xiao translation, so that Third Counterclaim should be dismissed.

A party must plead knowledge that "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual: (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen,* 575 F.3d at 1328–29. It is proper to dismiss inequitable conduct with prejudice when there is no pleading that can support an allegation of knowledge. *See id.; Abaxis, Inc. v. Cepheid*, 2011 WL 3741501, at *4 (N.D. Cal. Aug. 25, 2011) (granting motion to dismiss with prejudice).

Ecometal's _sole_ allegation as to "knowledge" by Doud, Farkas, Sherman, and Turung is Ecometal's incorrect reading of a hearing transcript from a related trade secret case. Ecometal says Terves litigation counsel's "represented to this Court" that he has a "standard operating

---

[8] Ecometal does _not_ assert inequitable conduct against Doud, Farkas or Sherman as to the '010 patent (First Counterclaim) or the '653 patent (Second Counterclaim).

procedure" of forwarding discovery "immediately to [his] client." (Am. Countercl. ¶ 78.) This is a deliberate misreading and cobbling of separate pages of transcript where counsel said he forwarded a subpoena response at issue in that case "immediately" to his client to get permission to subpoena to a different company (Tr. 16:17-24, ECF #66-19). Nonetheless, this twisting of counsel's statement fails the legal standard in *Exergen*. It does not establish that the individual inventors or Turung had immediate actual knowledge of all documents produced in litigation, let alone knowledge of "material" information in them, especially when Ecometal deposed the inventors and none of them testified that they had received those documents or believed the parts that Ecometal claims are material were material.[9] *Exergen,* 575 F.3d at 1328–29.

The Federal Circuit has flatly rejected this "should have known" standard for inequitable conduct. *Therasense,* 649 F.3d at 1290. Such "custodial files" are insufficient for properly pleading inequitable conduct because at most they merely establish negligence – which is *not* the same, high standard as inequitable conduct. *See C.R. Bard,* 2019 WL 1746309 at *2-4 (dismissing inequitable conduct because pled facts of "custodial files of [a person with the duty to disclose] does not show his knowledge of materiality or evidence his deceptive intent"); *Int'l Test Solutions,* 2017 WL 2118314, *6-7 (dismissing inequitable conduct against two inventors based on defendant's "broad" allegations that, as company employees, they had "knowledge of ITS's operations and nature of ITS's products" to know about the company's data sheets). Such "[g]eneral knowledge" is "not sufficient to support an inference that [the inventors] knew of specific material information contained in the prior art allegedly withheld." *Id.*

The holdings in *C.R. Bard* and *Int'l Test Solutions* equally apply here: Ecometal's bare-bones and incorrect allegation about a "standard operating procedure" falls well short of pleading

---

[9] In ruling on a Rule 12(b)(6) motion, the Court may consider transcripts from the case that "refute a plaintiff's claim" without converting the motion to one for summary judgment. *Watermark Senior Living Retirement Communities, Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425-26 (6th Cir. 2018).

with underlying facts that these individuals had specific knowledge of the "material" contents of those documents. Thus, Ecometal's bald, implausible fraud allegations against them fail. The Court should dismiss the third counterclaim on that additional basis.

### C.  Ecometal failed to allege "how" the mere identity of the litigation was "but-for" material to the patentability of the '740 Patent

As to the mere "existence" of litigation, Ecometal never explains "how" or "why" the existence of litigation on different patents is *but-for* material to patentability of the '740 patent. *See Seaboard Intern., Inc. v. Cameron Intern. Corp*., 2013 WL 3936889, at *11 (E.D. Cal. 2013) (dismissing inequitable conduct based on nondisclosure to the PTO of a related patent litigation for failing to adequately plead the "how" and "why" elements). The Court should dismiss any inequitable claim based on an allegation that litigation was not disclosed.

### D.  Ecometal fails to plausibly allege that individuals intended to deceive.

Ecometal's same, vague allegation that litigation counsel's "standard operating procedure" is to provide "documents" to the "client" also cannot plausibly establish that the inventors or Turung had an intent to deceive the USPTO. (Am. Countercl. ¶ 78.) Under Ecometal's false logic, "any individual may reasonably be suspected of fraud on behalf of his employer." *See Int'l Test Solutions,* 2017 WL 2118314, *9. Also, another district court went further in rejecting an inequitable conduct allegation that the inventor was the custodian of files and the withheld document was in those files, stating: "custodial files of [a person with the duty to disclose] does not show his knowledge of materiality or evidence his deceptive intent." *C.R. Bard, Inc.,* 2019 WL 1746309 at *2-4. Ecometal's allegation is more vague and conclusory than that allegation rejected by the court in *C.R. Bard* and also should be rejected.

Additionally, Ecometal does not plausibly allege that Turung or the inventors had intent to deceive because it provides no allegations to rebut the reasonable inference that they did not

disclose the items because they were not aware of anything in them material to patentability that was not already disclosed to the USPTO by citing Xiao, providing a copy of it in Chinese, and providing the English abstract.[10] That reasonable inference is especially strong because Xiao shows the dissolution rate tables in a form understandable by English speakers. Turung disclosing Xiao to the USPTO is inconsistent with the implausible allegation that these individuals were trying to hide Xiao's dissolution tables.

The Court should dismiss Counterclaim Three

## VI.    Ecometal's Inequitable Conduct Affirmative Defense (#6) Should Be Stricken

Ecometal also asserts an inequitable conduct affirmative defense. (ECF #66, Aff. Def. ¶ 6.) "The Court may strike from a pleading an insufficient defense …." Fed. R. Civ. P. 12(f). "[I]nequitable conduct counterclaims and affirmative defenses of inequitable conduct rise or fall together." *Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 16-CV-3529, 2016 WL 5871501, at *3 (N.D. Ill. Oct. 7, 2016). Therefore the Court should strike Ecometal's inequitable conduct affirmative defense (#6) under Rule 12(f).

## Conclusion

For the foregoing reasons, The Court should dismiss Ecometal's inequitable conduct counterclaims and strike affirmative defense #6 with prejudice.

Respectfully submitted,

Dated:  November 25, 2020
  s/ Matthew J. Cavanagh
Matthew J. Cavanagh (OH 0079522)

*Counsel for Terves LLC*

---

[10] Ecometal's allegation that Terves "did not submit any version of Xiao or its abstract during prosecution" of the '740 patent, (Countercl. ¶ 61), is false. Because Turung disclosed those in the original parent application to the '740 patent (the application that became the '010 patent), the Examiner considers it and the MPEP explicitly instructs applicants not to resubmit prior art cited in the parent application. *See Chameleon Chairs, LLC v. Theoni, Inc.*, CV 18-06816-AB, 2018 WL 6427366, at *5 (C.D. Cal. Nov. 8, 2018) (citing MPEP 609.02).

<u>L.R. 7.1(f) Certification</u>

In accordance with Local Rule 7.1(f), I hereby certify that this case is on the standard track and that the foregoing memorandum complies with the applicable page limitation of 25 20 pages.

  s/ Matthew J. Cavanagh      
*Counsel for Terves LLC*
