UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Terves LLC, | ) | |
| | ) | Case No. 1:19-cv-1611-DCN |
| Plaintiff, | ) | |
| | ) | Judge Donald C. Nugent |
| v. | ) | |
| | ) | |
| Yueyang Aerospace New Materials Co. Ltd. et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

**Terves' Opposition to Ecometal's Omnibus Motion *in Limine***

The Court should deny Ecometal's omnibus motion *in limine* (ECF #180) for the following reasons.

**I.      MMP's sales of infringing product are relevant and should not be excluded.**

Ecometal moves to bar evidence of sales of the infringing material by the company to which Ecometal imports the infringing material: Magnesium Machine, LLC ("MMP"). (Mot. 2-3.) The volume of Ecometal material sold by MMP, however, is relevant to Terves' lost profit damages because it shows the volume of sales that Terves' lost due to Ecometal's infringement.

Ecometal imports 100% of the infringing material in billet form from China to MMP in Oklahoma. MMP machines the infringing billets into infringing frac tools (*e.g.*, plugs and balls), and sells them to customers in the U.S.

Terves sells its patented *TervAlloy* in billet form (like Ecometal) and in frac tool form (like MMP). Thus, Terves competes against both Ecometal and MMP.

{10290180:3 }

By law, Terves may recover the lost profits that Terves would have earned but-for Ecometal's infringement. *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964). Here, Ecometal's infringement caused Terves to lose sales to customers that bought frac tools constructed from Ecometal's material from MMP. We know those MMP customers would have bought from Terves—if not for Ecometal's infringement—at least because of this real-world evidence: MMP's largest customer, KLX Energy, started buying Terves' patented products when it stopped buying tools made from Ecometal material from MMP.

Thus, Terves' damages expert calculated the profits that Terves would have made but-for Ecometal's infringement by looking at how much Ecometal material customers purchased from MMP. Accordingly, MMP's sales of Ecometal material are relevant to determining the volume of U.S. sales that Terves' lost as a result of Ecometal's infringement.

Ecometal argues that Terves "is not entitled to recovery" of MMP's revenues, and thus MMP revenue evidence "will confuse the jury and offer no probative value." (Mot. at 2.) Ecometal cites a single case addressing the "first sale" doctrine in support. (*Id.*) The Court should reject Ecometal's motion *in limine* for at least three reasons.

First, barring evidence of MMP's sales of infringing Ecometal material would equate to judgment against Terves of no lost profit damages. This is because, again, Terves' damage expert relies on MMP's sales of infringing product for calculating sales lost by Terves due to Ecometal's infringement. Requests to reject damage theories as a matter of law must be made by summary judgment, not by a truncated motion *in limine* procedure. *See Meyer Intellectual Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1378 (Fed. Cir. 2012) (viability of

claims or defenses must be decided by motion for summary judgment, not by motions in limine, because party must be allowed "full development of the evidence" and "opportunity to present all pertinent material to defend against" disposal of its claim or defense); *see also In re Gabapentin Patent Litigation*, No. 00–2931, 2011 WL 12516763, at *6 (D.N.J. Apr. 8, 2011) (same). Terves disclosed its expert's damage theory, which relied on MMP's sales volume of Ecometal material, on July 27, 2021, which is four months before summary judgment motions were due. Thus, any attempt to bar Terves from presenting its lost profit damage theory at trial should have been made at the summary judgment stage. It's too late to seek summary judgment of no lost profits by *in limine* motion.

Second, Ecometal is incorrect on the merits: MMP's sales are highly relevant to lost profits. Terves is not seeking to recover MMP's revenues, as Ecometal incorrectly argues. Indeed, the law does not allow a plaintiff to recover the infringer's sales or profits. *See Aro*, 377 U.S. at 507. Rather, Terves is seeking to recover Terves' lost profits. The best evidence of how much patented product Terves would have sold if Ecometal had not infringed is how much infringing Ecometal material KLX and others bought from MMP. *See id.* (lost profit test is "had the Infringer not infringed, what would the Patentee Holder—Licensee have made?"); *see also Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) ("patentee need only show that there was a reasonable probability that the sales would have made 'but for' the infringement"). Thus, MMP's revenues of tools made of Ecometal's infringing material is relevant for determining how much profit Terves lost because of Ecometal's infringement.

Third, Ecometal has no legal support to bar Terves' lost profit theory. Ecometal cites only one case, which has nothing to do with lost profits, and instead addresses the inapplicable "first sale" doctrine. (Mot. at 2.) The first sale doctrine generally says that when a patent owner sells its *own* patented product without restriction, it cannot sue downstream buyers of its own product for infringement. "The first sale/patent exhaustion doctrine establishes that the unrestricted first sale by a patentee of his patented article exhausts his patent rights in the article." *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1335-36 (Fed. Cir. 2006). Terves is not suing downstream customers of material <u>that Terves sold</u>, so the doctrine is inapplicable.

In sum, but-for Ecometal's infringement, Terves would have sold its patented *TervAlloy* frac plugs and balls to KLX and others that purchased tools made from Ecometal material. Thus, MMP's sales of frac tools made of Ecometal material is relevant to determining the volume of sales that Terves lost due to Ecometal's infringement. The Court should reject Ecometal's motion on this issue accordingly.

## II. The Court should not bar Terves from raising MMP's multiple lawsuits.

Ecometal seeks to bar any mention or introduction of at least four different lawsuits filed by MMP related to this case: (a) MMP's trade secret lawsuit against Terves and its trial counsel in this Court, No. 19-cv-2818 (the "Trade Secret Case"); (b) MMP's lawsuit against Terves in Oklahoma federal court that seeks a declaratory judgment of no infringement and invalidity on the same patents and same products at issue in this case, No. 2021-CV-1115 (the "Redundant Case"); (c) MMP's miscellaneous action against Terves in Oklahoma federal court that moved to quash a Terves subpoena issued from this case, No. 2019-MC-

0009 (the "Subpoena Case"); and (d) the lawsuit in Oklahoma federal court by MMP's former customer KLX Energy against MMP, which includes MMP counterclaims, No. 2020-CV-1129 (the "KLX Case"), involving allegations related to frac plugs made of Ecometal material.

One or more of these cases likely will be relevant to evidence willful infringement, MMP's bias, and to show that MMP and Ecometal are partners in business and in litigation.

MMP and Ecometal partner together with respect to the infringing material and their joint defense efforts to keep that infringing material flowing into the U.S. to enrich themselves. As to their business partnership, they have an exclusivity agreement, whereby Ecometal sells the infringing material only to MMP, and MMP must buy the infringing material only from Ecometal. They, therefore, have a shared financial interest in maintaining the importation of the infringing material.

Consistent with that shared business interest, they also have worked together to defend against Terves' case, to delay it, and run up Terves' fees with hyper-aggressive litigation, which evidences willfulness infringement. For example, Ecometal and MMP are sharing defense costs of this case; they are jointly represented by the same lawyers (the White Law Firm and Dunlap Codding, P.C.); and they filed two *inter partes* petitions challenging Terves' patents that identified Yuan, Ecometal, and MMP together as the "real parties in interest" (ECF #84-1 at 4).

MMP's multiple lawsuits are part of their concerted effort to resist and delay Terves' patent case. The jury should be permitted to learn about these lawsuits because they demonstrate willful infringement by Ecometal. Rather than stop selling the infringing

product or re-design, MMP helped financed Ecometal's defense and filed multiple litigation attacks upon Terves to try and scare it off. Ecometal has welcomed MMP's financing and assistance because it has allowed it to import infringing material as long as possible and for the last three years.

Facing trial, Yuan may try and disclaim MMP and its failed litigation efforts. Based on their mutual interests and relationship, the jury should be allowed to decide for itself to what extent Yuan invited or enjoyed MMP's heavy litigation tactics to try and derail or delay Terves' case to continue the willful infringement. *See SRI Intern., Inc. v. Ad. Technology Labs., Inc.*, 127 F.3d 1462, 1468 (Fed. Cir. 1997) (affirming willful infringement where defendant tried to delay to continue its infringement as long as possible); *SRI Int'l, Inc. v. Cisco Sys.*, Inc., 14 F.4th 1323, 1327 (Fed. Cir. 2021) (appropriate jury instructions for determining willfulness include whether defendant made good faith effort not to infringe and whether defendant tried to cover up its infringement). Terves should not be barred from exploring those areas with MMP or Ecometal.

MMP's lawsuits also are relevant to bias. Terves expects that MMP will testify at trial to try and help their importer Ecometal escape liability. If so, Terves should be permitted to raise the MMP lawsuits as bias evidence to show that MMP has repeatedly used litigation to protect its business partner and importer, Ecometal, against Terves' lawsuit.

MMP's lawsuit is also relevant to show that MMP and Ecometal are acting together both in their business and in their defense of this case. This rebuts Yuan's likely attempts at trial to distance himself from his MMP partners at trial.

### III. The fact that MMP infringes by selling tools made of infringing Ecometal material is highly relevant.

Ecometal seeks to bar evidence of "Unasserted Claims," which is an undefined term, but apparently relates to the fact that MMP is also an infringer and sells tools made of infringing Ecometal material. Ecometal says arguing "unasserted claims" against MMP— whatever that means— would "confuse the jury about who the alleged bad actor is or tar Ecometal and Yuan with conduct of parties not involved in this action." (ECF #180 at 4.) This argument ignores the reality that this Court found that Ecometal's AJM products all infringe Terves' patents and that MMP exclusively buys AJM products, machines them into tools, and sells them to customers that would have bought Terves' patented products but-for Ecometal's infringement. MMP is thus, by definition, also an infringer because it sells the infringing materials to others. *See* 35 U.S.C. § 271(a) ("whoever without authority … sells any patented invention … infringes the patent"); *see also Fellowes, Inc. v. Michilin Prosperity Co.*, 491 F. Supp. 2d 571, 575 (E.D. Va. 2007) (both foreign manufacturer and U.S. seller liable for direct infringement).

For this reason, and because Terves is entitled to lost profits on MMP's sales of Ecometal material (see above), the Court should deny Ecometal's motion to bar evidence related to MMP.

### IV. Ecometal's "arguments beyond the scope of produced discovery" argument is moot.

Ecometal next asks the Court to bar evidence related to evidence not disclosed in discovery. Its only example is evidence related to experimental results obtained during conception and reduction to practice of the inventions. (Mot. at 5.) Ecometal says that this

evidence is relevant to errors in the specification that it "pointed out during the '653 reexam, circa February 2022." (*Id.*) Therefore, Ecometal is seeking to bar evidence relevant apparently to establish validity of the patents.

In its summary judgment order, however, the Court dismissed claims related to patent-ineligibility, indefiniteness, enablement, and written description for *all* asserted claims and anticipation/obviousness for the unchallenged claims. (ECF #178 at 11-14.) Following this order, the parties jointly stipulated to dismiss all the challenged claims from the case. (ECF #185 (dismissing all claims of invalidity without prejudice).) As a result, the motion is moot because Ecometal has no defenses that remain for trial. Moreover, this Court addressed this argument previously, and ruled that it was too late to raise this invalidity theory because Ecometal had access to the patents for over two years and never raised this argument. (ECF #170 at 3 ("The alleged error has been a part of the patent since before this case was filed and could have been discovered by anyone with access to the patent. Defendant could have raised this issue prior to the close of briefing on the summary judgment motions....")

To the extent that Ecometal seeks to bar other evidence not "properly disclosed" in discovery, the authorities it cites prove that its motion is unnecessary and any such issues should be addressed at trial. *See, e.g., Elion v. Jackson*, 544 F. Supp. 2d 1, 5 (D.D.C. 2008) (failing to provide discovery is a "self-executing sanction"). Therefore, its motion *in limine* is speculative, unnecessary, and the Court can decide any evidentiary issues on this basis at trial.

## V.     Chinese imports are directly relevant to the harm that Terves suffers.

Ecometal asks the Court to bar attempts to "reference, in a derogatory manner, the citizenship or residence" of Nick Yuan. (ECF #180 at 6-7.) Terves would not make derogatory remarks towards China, or the people of Chinese national origin at trial, and to suggest otherwise is unjustified. Of course, however, Mr. Yuan is a Chinese citizen, he uses his connections in China to obtain material, he imports infringing magnesium from China into the U.S., and those Chinese products have lower prices. Those are relevant and undisputed facts. The low pricing issue is especially relevant because Ecometal's infringement forced Terves to lower its pricing and caused it to lose sales. This is all relevant damages evidence. To impose a "don't say China" gag order on Terves is neither appropriate nor supported by the law.

Neither case Ecometal cites applies here. In *Gillis*, the court considered issues related the Chinese ownership and exportation of pork, not patent damages or injunctive relief. *Gillis v. Murphy-Brown, LLC*, No. 7:14-CV-185-BR, 2018 WL 5905118, at *1 (E.D.N.C. Nov. 9, 2018). Even then, the Court stated that the ruling was subject to being revisited at trial if the defendant opened the door. *Id*.

In *Bunch*, a personal injury case involving a Chinese bicycle, the court granted in part the motion on the basis that "gratuitous or derogatory remarks considering manufacture in China or Taiwan are clearly improper," but it also <u>denied</u> the motion in part because the plaintiff had the right to present evidence "indicating that the Bicycle was manufactured in China." *Bunch v. Pac. Cycle, Inc.*, No. 4:13-CV-0036-HLM, 2015 WL

11622952, at *7 (N.D. Ga. Apr. 27, 2015). As such, this case only serves to prove Terves' point: that arbitrarily barring it from referencing China is not proper.

## VI. The Court should not bar Terves from seeking reasonable royalty damages.

Ecometal moves to bar Terves from asking the jury for reasonable royalty damages by arguing that Terves has no "evidence or expert testimony supporting a claim to reasonable royalty." (Mot. 7.) The Court should reject this request for at least three reasons.

First, a motion *in limine* is not the proper procedural mechanism for having a damage claim dismissed outright. If Ecometal believed Terves had no damage evidence, then it should have moved for summary judgment of no damages. This is what the defendant did in the *Unicom* case that Ecometal block-quotes in its motion. Again, a motion *in limine* is too truncated to allow for the in-depth factual development and legal analysis needed to fairly decide the weighty question of whether a plaintiff may seek damages at trial.

Second, reasonable royalty damages are not optional. Rather, the Patent Act statutorily mandates that they <u>must</u> be awarded as minimum damages to the patent holder. The Patent Act states:

> Upon finding for the claimant the court ***shall award*** the claimant ***damages adequate to compensate for the infringement***, but ***in no event less than a reasonable royalty*** for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

35 U.S.C. § 284. In the *Apple v. Motorola* case, the Federal Circuit explained the mandatory nature of reasonable royalties:

> [T]he statute requires the court to award damages "in no event less than a reasonable royalty."

> * * *
>
> Because no less than a reasonable royalty is required, the fact finder must determine what royalty is supported by the record.
>
> * * *
>
> If a patentee's evidence fails to support its specific royalty estimate, the fact finder is still required to determine what royalty is supported by the record.
>
> * * *
>
> Indeed, if the record evidence does not fully support either party's royalty estimate, the fact finder must still determine what constitutes a reasonable royalty from the record evidence.

757 F.3d 1286, 1327-28 (Fed. Cir. 2014). The Federal Circuit further explained how rare it would be to grant <u>zero</u> reasonable royalty damages at summary judgment because it would mean the jury could only conclude that the patentee "would have been willing to accept no payment for [defendant's] infringement." *Id.* at 1328-29.

Therefore, this Court should permit the jury to decide reasonable royalty damages based on the evidence presented at trial. There is plenty of evidence relevant to the *Georgia-Pacific* factors for deciding reasonable royalty damages, including the advantages of the patented product over prior frac plug materials, the profitability of the Terves' patented product, the extent to which Ecometal has made use of the invention, and the length of the remaining terms on the patents. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (listing relevant factors for deciding reasonable royalty).

Third, Terves needs no expert testimony to obtain reasonable royalty damages. The Federal Circuit flatly rejected Ecometal's expert argument in *Apple v. Motorola.* The Federal Circuit held: "Even if Apple [the patent owner] had not submitted expert evidence, this

alone would not support a finding that zero is a reasonable royalty." *Id.* at 1330. The court further explained: "The use of expert testimony is permissive. Thus, if a patentee's damage expert is excluded, that does not automatically deny a patentee a right to recover damages." *Id.* (quoting *Annotated Patent Digest* § 44:79). Indeed, the Patent Act's damage provision says an expert on reasonable royalty damages is optional. It states: "The court <u>may</u> receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable." 35 U.S.C. § 284 (emphasis added).

## Conclusion

For these reasons, the Court should deny Ecometal's motion *in limine*.

Respectfully submitted,

Dated: April 20, 2022

   s/ Matthew J. Cavanagh
David B. Cupar (OH 0071622)
Matthew J. Cavanagh (OH 0079522)
Andrew D. Gordon-Seifert (OH 0092499)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 | f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com
agordon-seifert@mcdonaldhopkins.com

*Counsel for Terves LLC*